UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| STANLEY SOFFERMAN, | : |
| Plaintiff, | : Case No._____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| ASSERTIO THERAPEUTICS, INC., JAMES P. FOGARTY, WILLIAM T. MCKEE, KAREN A. DAWES, HEATHER L. MASON, DAVID E. WHEADON, ARTHUR J. HIGGINS, JAMES L. TYREE, PETER D. STAPLE, and JAMES J. GALEOTA, JR., | : **THE FEDERAL SECURITIES LAWS** : : JURY TRIAL DEMANDED : : : |
| Defendants. | : |

------------------------------------------------------------

Plaintiff Stanley Sofferman ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.     This action is brought by Plaintiff against Assertio Therapeutics, Inc. ("Assertio" or the "Company") and the members of Assertio's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on the proposed merger of Assertio and Zyla Life Sciences ("Zyla") (the "Proposed Transaction").

2.     On March 16, 2020, Assertio and Zyla issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 16, 2020 (the "Merger

Agreement").  Under the terms of the Merger Agreement, Assertio and Zyla will become wholly-owned subsidiaries of a new holding company, Assertio Holdings, Inc. ("Assertio Holdings"), with Asertio Holdings assuming Assertio's listing on the Nasdaq Stock Market.  Zyla stockholders will receive 2.5 shares of Assertio Holdings common stock for each Zyla share they own (the "Merger Consideration").

3.      On April 20, 2020, Assertio filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Assertio stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Assertio and Zyla management's financial projections and the data and inputs underlying the valuation analyses that support the fairness opinion provided by the Company's financial advisor Stifel, Nicolaus & Company, Inc. ("Stifel"); (ii) the background of the Proposed Transaction; and (iii) Stifel's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Assertio stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Assertio's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Assertio common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Assertio.

9.      Defendant Assertio is incorporated in Delaware, with its principal executive offices located at 100 South Saunders Road, Suite 300, Lake Forest, Illinois 60045.  Assertio provides solutions to advance patient care in the Company's core areas of neurology, orphan and specialty medicines.  Assertio's shares trade on the Nasdaq Global Select Market under the ticker symbol "ASRT."

10.     Defendant James P. Fogarty ("Fogarty") serves as Chairman of the Board and has been a director of the Company since October 2016.

11.     Defendant William T. McKee ("McKee") has been a director of the Company since March 2017.

12.     Defendant Karen A. Dawes ("Dawes") has been a director of the Company since April 2008.

13.     Defendant Heather L. Mason ("Mason") has been a director of the Company since February 2019.

14.     Defendant David E. Wheadon ("Wheadon") has been a director of the Company since September 2019.

15.     Defendant Arthur J. Higgins ("Higgins") has been President, Chief Executive Officer ("CEO"), and a director of the Company since March 2017.

16.     Defendant James L. Tyree ("Tyree") has been a director of the Company since October 2016.

17.     Defendant Peter D. Staple ("Staple") has been a director of the Company since November 2003.

18.     Defendant James J. Galeota, Jr. ("Galeota") has been a director of the Company since April 2019.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20.     Zyla is a Delaware corporation with its principal executive offices located at 600 Lee Road, Suite 100, Wayne, Pennsylvania 19087.  Zyla is a commercial-stage life science company focused on marketing its portfolio of medicines which include: SPRIX (ketorolac tromethamine) Nasal Spray, ZORVOLEX (diclofenac), VIVLODEX (meloxicam), INDOCIN (indomethacin) suppositories, INDOCIN oral suspension, and OXAYDO (oxycodone HCI, USP)

tablets for oral use only - CII.  Zyla's shares trade on the OTCQX exchange under the ticker symbol "ZCOR."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Assertio is a leading diversified, specialty pharmaceutical company focused on distinctive products that offer enhanced therapeutic options for patients in need.  The Company's current specialty pharmaceuticals business includes CAMBIA (diclofenac potassium for oral solution), a non-steroidal anti-inflammatory drug for the acute treatment of migraine attacks, which the Company acquired in December 2013, and Zipsor (diclofenac potassium liquid filled capsules), a non-steroidal anti-inflammatory drug for the treatment of mild to moderate acute pain, which the Company acquired in June 2012, both of which are marketed in the United States.

22.     On March 9, 2020, the Company announced its fourth quarter and full year 2019 financial results, which including the following highlights: neurology franchise annual net sales were $108.1 million, exceeding the upper end of the Company's prior guidance, and completion of the strategic asset sales of NUCYNTA Franchise and Gralise for $502.5 million.  Defendant Higgins commented on the Company's recent financial success, stating:

> When I joined Assertio nearly three years ago we had $820 million of debt which significantly restricted our flexibility to do acquisitions and strategic combinations. I am pleased to say that we are now on track to retire our outstanding debt and to have approximately $50 million of cash on our balance sheet. . . . We now look to leverage this strengthened balance sheet to create a sustainable and growth-oriented specialty pharmaceutical company. We look forward to presenting our updated strategy for doing so in the near future.

23.     On May 11, 2020, the Company reported its first quarter 2020 financial results.  For the quarter, GAAP revenue totaled $20.9 million, and net income was $41.2 million.  The Company generated GAAP earnings per share of $0.58 for the quarter, and non-GAAP Adjusted

EBITDA of $6.1 million.

**The Proposed Transaction**

24.    On March 16, 2020, Assertio and Zyla issued a joint press release announcing the

Proposed Transaction, which states, in relevant part:

> LAKE FOREST, Ill. and WAYNE, Penn., March 16, 2020 -- Assertio Therapeutics, Inc. ("Assertio" or "the Company") (NASDAQ: ASRT) and Zyla Life Sciences ("Zyla") (OTCQX: ZCOR), today announced that they have entered into a definitive merger agreement (the "Agreement"). Under the terms of the Agreement, upon the effective time of the merger (the "Merger"), Zyla stockholders will be entitled to receive 2.5 shares of common stock of a newly-formed holding company for each share of Zyla common stock held and the newly combined company will retain the Assertio name and trade on Nasdaq under the ASRT ticker. The boards of directors of both companies have approved the Merger and the Agreement. The Merger is currently expected to close in the second quarter of 2020, subject to approval by Assertio stockholders and by Zyla stockholders and the satisfaction of other customary closing conditions.
>
> The Merger will create a leading commercial pharmaceutical company with neurology, inflammation and pain products. The combined company will have a leading portfolio of branded non-steroidal anti-inflammatory drugs (NSAIDs) commonly used by neurologists, orthopedic surgeons, internists, women's health providers, podiatrists and pain care specialists. Together, management intends to build a best-in-class specialty pharmaceutical company focused on commercial execution. The new company will have the platform, profitability and financial strength to both grow its existing portfolio and acquire additional complementary assets.
>
> "Today's announcement represents an exciting new chapter in the transformation of Assertio and the Merger presents the perfect opportunity for me to transition into the role of non-executive chairman," said Arthur Higgins, president and chief executive officer (CEO) of Assertio. "With over 25 years of pharmaceutical, medical device and biotechnology experience and a proven track record of success, Todd Smith has the leadership and business skills necessary to take the new Assertio to the next level."
>
> Following the closing of the Merger, the parties agreed that in addition to Mr. Higgins becoming non-executive chairman of the board of the new holding company, Mr. Smith, the current president, CEO and director of Zyla, will become president, CEO and director of the new holding company.
>
> There will be nine directors on the board of directors of the new holding company, six coming from Assertio including Mr. Higgins and three from Zyla, including Mr.

Smith and Timothy P. Walbert, chairman, president and CEO of Horizon Therapeutics and chairman of Zyla's board of directors, who will become the lead independent director of the board of the new holding company.

"We believe the merger of Zyla and Assertio will create a stronger company with a robust differentiated portfolio," said Mr. Smith. "The new holdings company's revenues, EBITDA margin and expected combined company net debt to EBITDA leverage of two times will be notable among the specialty pharmaceutical companies of our size. We believe this transaction positions the combined company to grow its existing businesses and further accelerate growth by adding differentiated products through acquisitions and partnerships."

**Anticipated Strategic and Financial Benefits of New Holding Company**

- Pro forma 2019 net product sales of approximately $128 million
- Projected pro forma 2020:
  - Non-GAAP adjusted EBITDA margin of greater than 25 percent
  - Upwards of $40 million in cost synergies, in addition to Assertio's previously announced $15 million in acceleration of cost savings initiatives
- Complementary products expected to result in leading portfolio of NSAIDs
- Positioned to take advantage of trend toward non-opioid pain products
- Reduced Zyla debt and holding company is expected to have net debt to EBITDA leverage of two times
- Positions Company to add differentiated products through acquisitions and partnerships

**Financials**

In connection with the Merger, Zyla will repay its promissory note in full and the outstanding balance under its $20 million credit facility. The holding company will assume only the $95 million principal amount of Zyla's outstanding senior debt under amended terms that provide the combined company flexibility for future business development.

**Insiders' Interests in the Proposed Transaction**

25.    Assertio insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Assertio.

26.     Notably, certain Company insiders will secure positions for themselves with the combined company.  For example, six out of nine members of the combined company's board of directors will be Assertio designees.

27.     In addition, defendant Higgins and the Company have reached a Transition Agreement (the "Transition Agreement") pursuant to which he will transition from his role as President and CEO to serve as Non-Executive Chairman of the board of Assertio Holdings until the 2022 Annual Meeting of the Stockholders of Assertio Holdings (such period of service, the "Service Term").  The Transition Agreement further provides that on the effective date of the Proposed Transaction, defendant Higgins will receive a $400,000 cash payment from Assertio. During the Service Term, defendant Higgins will be eligible to receive substantial benefits including annual cash retainers, annual grants of restricted stock units ("RSU"), a lump-sum severance payment in the amount of $1,200,000, and a prorated bonus for 2020 in an amount of up to $400,000.  The following tables summarize the value of potential Golden Parachute payments that defendant Higgins stands to receive:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Arthur J. Higgins | $ 2,095,000 | $1,144,348 | $7,500 | $3,246,848 |

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Assertio's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Assertio and Zyla management's financial projections and the data and inputs

underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Stifel; (ii) the background of the Proposed Transaction; and (iii) Stifel's potential conflicts of interest.

***Material Omissions Concerning the Financial Projections and Stifel's Financial Analyses***

30.     The Proxy Statement omits material information regarding Company and Zyla management's financial projections for Assertio, Zyla and the combined pro forma company.

31.     For example, with respect to each of the Assertio Base Case Projections, Assertio Management-Adjusted Zyla Projections, Assertio Pro Forma Projections, and Zyla Original Case Projections, the Proxy Statement fails to disclose the unlevered free cash flows ("UFCF") over the projection period, the definition of how UFCFs were calculated, and all underlying line items used to calculate UFCFs.

32.     With respect to the Zyla Base Case Projections, Zyla Optimistic Case Projections, Zyla Management-Adjusted Assertio Projections, and Zyla Pro Forma Projections, the Proxy Statement fails to disclose all line items underlying the calculation of UFCFs, including, (a) NOPAT, (b) depreciation and amortization, (c) proceeds from asset divestitures, (d) Indocin royalty expenses, (e) changes in working capital, and (f) Gralise payments received.

33.     The Proxy Statement also fails to disclose material information regarding Stifel's financial analyses.

34.     The Proxy Statement describes Stifel's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Stifel's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Assertio's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Stifel's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

35.     With respect to Stifel's *Selected Publicly Traded Companies Analysis* of each of Assertio and Zyla, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies analyzed by Stifel; and (ii) quantification of the inputs and assumptions underlying the discount rate range of 14.0%-16.0% utilized in the analysis.

36.     With respect to Stifel's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the transactions analyzed by Stifel; and (ii) quantification of the inputs and assumptions underlying the discount rate range of 16.0% to 18.0% utilized in the analysis.

37.     With respect to Stifel's *Discounted Cash Flow Analysis* of Assertio, the Proxy Statement fails to disclose: (i) Assertio's UFCFs over the projection period that form the basis of the analysis; (ii) Assertio's projected calendar year 2029 free cash flow; (iii) quantification of the terminal value of Assertio; (iv) the basis for selecting a range of perpetuity growth rates of (28.0%) to (38.0%); and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%.

38.     With respect to Stifel's *Discounted Cash Flow Analysis* of Zyla, the Proxy Statement fails to disclose: (i) Zyla's UFCFs over the projection period that form the basis of the analysis; (ii) Zyla's projected calendar year 2029 free cash flow; (iii) quantification of the terminal value of Zyla; (iv) the basis for selecting a range of perpetuity growth rates of (5.0%) to (15.0%); and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 16.0% to 18.0%.

39.     Without such undisclosed information, Assertio stockholders cannot evaluate for themselves whether the financial analyses performed by Stifel were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Stifel's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40.     The omission of this material information renders the statements in the "Certain Unaudited Projections of Assertio," "Certain Unaudited Projections of Zyla," and "Opinion of Assertio's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41.     The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

42.     For example, the Proxy Statement sets forth that:

> During the period from March 2017 through February 2020, Assertio and its financial advisors screened and considered over 200 potential business development partners or opportunities and engaged in preliminary discussions with 64 companies. Despite this broad outreach, none of these inquiries besides those with Zyla and another candidate ("Company B") progressed beyond preliminary discussions because of perceived risks regarding Assertio's outstanding opioid-related litigation and related governmental investigations and/or the historical level of Assertio's outstanding debt.

Proxy Statement at 89.  The Proxy Statement, however, fails to disclose whether Assertio executed any confidentiality agreements with any of these potential business development partners, including Company B, and, if so, whether the confidentiality agreements include a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding potential acquirers from submitting a topping bid for the Company.

43.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a

superior proposal for the Company.  If the potential acquirer's confidentiality agreement contains

a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching

the confidentiality agreement—since in order to make the superior proposal, it would have to ask

for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if

action has been done, is omitted from the Proxy Statement.

44.     Any reasonable Assertio stockholder would deem the fact that the most likely

topping bidders for the Company may be precluded from making a topping bid for the Company

to significantly alter the total mix of information.

45.     The Proxy Statement further sets forth that "Zyla and Company B were the only

two companies that had expressed interest in pursuing a strategic transaction with Assertio." *Id.*

at 94.  The Proxy Statement fails to disclose the nature of the interest Company B expressed,

including whether Company B submitted any proposals or indications of interest to the Company

and the terms thereof.

46.     The omission of this information renders the statements in the "Background of the

Merger" section of the Proxy Statement false and/or materially misleading in contravention of the

Exchange Act.

***Material Omissions Concerning Stifel's Potential Conflicts of Interest***

47.     The Proxy Statement fails to disclose material information concerning the conflicts

of interest faced by Stifel.

48.     The Proxy Statement sets forth that:

Stifel is acting as financial advisor to Assertio in connection with the Merger.
Assertio agreed to pay Stifel a fee of $1,250,000 for its services, $750,000 of which
became payable upon the delivery of the Stifel Opinion, and the remaining portion
of which is contingent upon the completion of the Merger. Stifel previously acted
as financial advisor to Assertio in connection with the sale of certain assets of its
NUCYNTA business to Collegium in February 2020, for which Stifel is entitled to
receive or has received compensation. In addition, Assertio has also agreed to pay

Stifel an additional fee of $1,000,000 following closing of the Merger if certain milestones are met.

*Id.* at 123.  However, the Proxy Statement fails to disclose: (i) the amount of compensation Stifel is entitled to receive or has received in connection with advising Assertio on the sale of certain assets of its NUCYNTA business to Collegium in February 2020; (ii) the milestones underlying the conditions to Stifel receiving the additional fee of $1,000,000; and (iii) whether those milestones have been met.

49.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50.     The omission of this material information renders the statements in the "Opinion of Assertio's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Assertio will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Company and Zyla management's financial projections, the data and inputs underlying Stifel's financial analyses, the background of the Proposed Transaction, and Stifel's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of Assertio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Assertio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Assertio stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Assertio, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Assertio stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  May 12, 2020                                    **WEISSLAW LLP**

                                    By _____
                                       Richard A. Acocelli
                                       1500 Broadway, 16th Floor
                                       New York, New York 10036
                                       Tel: (212) 682-3025
                                       Fax: (212) 682-3010
                                       Email: racocelli@weisslawllp.com

                                       *Attorneys for Plaintiff*